[891 NYS2d 246]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v LESTER RODRIGUEZ, Defendant.

Supreme Court, Bronx County, October 29, 2009

**APPEARANCES OF COUNSEL**

*Lichtenstein & Schindel* (*Sande Lichtenstein* of counsel), for defendant. *Robert T. Johnson, District Attorney* (*Michael Fraggetta* of counsel), for plaintiff.

**OPINION OF THE COURT**

RICHARD LEE PRICE, J.

The defendant is charged with three counts of operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [1], [3]), and one count of reckless driving (Vehicle and Traffic Law § 1212). Defendant moves to suppress any evidence or testimony at trial concerning his alleged refusal to submit to a chemical breath analysis including the videotape recording of those events.

On October 28, 2009, this court conducted a hearing on this issue. The People called one witness: Police Officer Widy Duran. The defendant also testified. This court finds the testimony of Officer Duran credible, and the defendant's testimony not credible. Upon hearing oral argument from both the defendant and the People, and viewing the videotape recording of defendant's refusal to submit to an Intoxilyzer breath test, this court denied defendant's motion. This decision expands the decision rendered from the bench on October 28, 2009.

Findings of Fact

On March 6, 2009, at approximately 3:47 A.M., Officer Duran, dressed in uniform, observed the defendant driving a 2008 Subaru Impreza near the Bruckner Expressway and Pelham Bay Park in Bronx County. She further observed the defendant swerving throughout the three lanes of traffic without activating the vehicle's signal indicators. After watching several other vehicles swerve to avoid being struck by the defendant, Officer Duran testified that the defendant then swerved into her traffic lane nearly striking her vehicle.

Officer Duran then stopped the defendant, exited her vehicle with her partner and approached the driver's side of the defendant's vehicle. She testified that in response to her asking the defendant where he had come from and where was he going, he was unable to clearly and coherently answer. Slurring his speech, the defendant eventually stated, "I am coming from a bar on Brunner and East Tremont. I am going home. I have been drinking." Officer Duran also noticed that the defendant's eyes were bloodshot and that he had a strong odor of an alcoholic beverage emanating from his breath. Based on her training and experience, Officer Duran concluded that the defendant was, in fact, intoxicated. Defendant then submitted to a field sobriety test.

At approximately 5:00 A.M., after being transported to the 45th Precinct for the purpose of administering an Intoxilyzer

breath test, the defendant was offered an opportunity to submit to an Intoxilyzer breath test to which he replied that he would not. The defendant was then advised of the consequences of refusing to submit to an Intoxilyzer breath test, after which the defendant again refused. Viewing the videotape recording of that proceeding, the court finds that the defendant was provided with clear and unequivocal warnings as to the consequences of refusing to submit to a blood alcohol analysis. The videotape also clearly reflects that the defendant persistently refused to submit to an Intoxilyzer breath test.

Conclusions of Law

Initially, the People have the burden of commencing a suppression hearing by presenting evidence of probable cause to show the legality of the police conduct (*People v Baldwin*, 25 NY2d 66 [1969]; *People v Malinsky*, 15 NY2d 86 [1965]). Once the People have met this burden, it is the defendant that bears the burden of proving any illegality of the police conduct (*People v Berrios*, 28 NY2d 361 [1971]; *People v Baldwin*, 25 NY2d 66 [1969]). Here, the People have presented sufficient evidence that the stop of the defendant was proper based upon Officer Duran's observation of him driving erratically. That, by itself, provided a reasonable suspicion that the defendant had committed a violation of the Vehicle and Traffic Law (*see People v Ingle*, 36 NY2d 413 [1975]).

Upon approaching the vehicle, Officer Duran observed the defendant seated behind the steering wheel, with the keys in the ignition and the engine running. Speaking in slurring speech, the defendant admitted that he was coming from a bar where he had been drinking. Officer Duran also noticed that his eyes were watery and bloodshot, and a strong odor of alcohol was emanating from his breath. At that point, she had reasonable suspicion to believe that the defendant was intoxicated and was justified in directing him to submit to a field sobriety test (*see People v De Bour*, 40 NY2d 210, 223 [1976]), which he failed. This, in addition to the observations made by Officer Duran, justified her conclusion that, based on her training and experience, the defendant was intoxicated, and thus, she had probable cause to arrest him for operating a motor vehicle while intoxicated (*see People v Bigelow*, 66 NY2d 417, 423 [1985]; *People v Goodell*, 164 AD2d 321, 323-324 [4th Dept 1990], *affd* 79 NY2d 869 [1992]; *People v Farrell*, 89 AD2d 987, 988 [2d Dept 1982]).

Regarding defendant's alleged refusal, the People bear the burden of establishing that the defendant refused to submit to a

chemical test (*People v Camagos*, 160 Misc 2d 880, 881 [Sup Ct, Queens County 1993, Yellen, J.]). To meet this burden, however, the People are not required to disprove every possible fact that might weigh in favor of suppression (*People v Womack*, 18 Misc 3d 1135[A], 2008 NY Slip Op 50319[U] [Crim Ct, NY County 2008, Whiten, J.]). Courts have permitted the People to use evidence of a refusal to submit to a chemical test as consciousness of guilt evidence where a defendant charged with driving while intoxicated was warned of the consequences of doing so in clear and unequivocal language (*People v Reynolds*, 133 AD2d 499 [3d Dept 1987]; *People v Coludro,* 166 Misc 2d 662 [Crim Ct, Kings County 1995, Ruchelsman, J.]). Here, the refusal warnings administered to the defendant were indeed clear and unequivocal, as was his subsequent refusal. Defendant argues, however, that because the test was not offered to him until more than two hours after arrest, evidence of it must be suppressed as a violation of the two-hour rule contained in Vehicle and Traffic Law § 1194 (2).

Clearly, where a test is administered within two hours of an arrest, implied consent is deemed to have been given. However, when more than two hours have passed between an arrest and the administering of the Intoxilyzer breath test, the Court of Appeals has held that "the two-hour limitation contained in Vehicle and Traffic Law § 1194 (2) (a) has no application here where . . . defendant expressly and voluntarily consented to administration of the . . . test" (*People v Atkins*, 85 NY2d 1007, 1009 [1995]). Citing its prior decision in *People v Ward* (307 NY 73 [1954]), the Court of Appeals stated that the "deemed consent" statute "had no application where the defendant expressly and voluntarily consented" to the test (*see Atkins*, 85 NY2d at 1008). It further noted that the statute was "concerned, not with those who consented to take the test, but those who were required to submit," and added that the court found it "difficult to perceive any necessity for the protections embodied in [the deemed consent statute] where the driver freely volunteers to take the test" (*id*. at 1008). Thus, when an Intoxilyzer breath test is administered after more than two hours have passed, the admissibility of the test results rests on whether express consent was given.

In view of *Ward* and *Atkins*, the premise that Intoxilyzer breath test results are presumed unreliable when the test is administered more the two hours after the stop is simply not valid (*People v Lewis*, 25 Misc 3d 1209[A], 2009 NY Slip Op

52008[U] [Crim Ct, NY County 2009]). As such, the argument that evidence of a refusal offered more than two hours after being stopped is similarly unsupported, and a logical analysis of this claim suggests that precisely the opposite is true. If chemical test results obtained more than two hours after the stop are admissible when a defendant expressly consents to it, then evidence of a refusal to take it after more than two hours should be admissible as well, particularly since Vehicle and Traffic Law § 1194 (2) makes no reference to any time limit (*see People v Morales*, 161 Misc 2d 128 [Crim Ct, Kings County 1994, Garnett, J.]). To hold otherwise would permit a defendant who was properly offered an opportunity to expressly consent to a chemical test to benefit from refusing. More significantly, it would essentially render the refusal warnings noted in Vehicle and Traffic Law § 1194 (2) meaningless and the *Atkins* ruling superfluous.

Defendant's motion to suppress evidence of his refusal to submit to the Intoxilyzer breath test is therefore denied.